IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

RONALD CULLEN, )
)
         Plaintiff, )
)
v. ) Civil No. 07-06132-CV-SJ-DGK
)
TWA AIRLINES, LLC. et al., )
)
         Defendants. )

**ORDER**

      Plaintiff Ronald Cullen brought this action pursuant to the Employee Retirement Income and Security Act ("ERISA") seeking reinstatement of his long term disability benefits, which were terminated in May 2005. Defendants, Cullen's former employer TWA Airlines, LLC ("TWA") and the plan administrator TWA Airlines LLC Universal Welfare Benefit Plan ("TWA Plan") moved for summary judgment (Doc. #26), and Plaintiff likewise filed a Motion for Summary Judgment (Doc. #28). Both Motions have been fully briefed. On February 26, 2009, the Court instructed the parties to file additional briefs on three discrete issues (Doc. 42). The parties submitted responses to the February 26 Order on April 17, 2009 (Docs. 47, 48, 49), and Defendant submitted a supplemental reply on May 12, 2009 (Doc. 53). After a thorough review of the record, including the supplemental briefing, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's claims and DENIED as to Defendant's Counterclaim.

**Procedural and Factual Background**

      Cullen worked for TWA from 1982 through June 2000 as an analyst. Cullen started receiving disability benefits on October 1, 2001, and received them until they were terminated on

May 11, 2005.

American Airlines acquired TWA, and created the TWA Plan to provide disability benefits to former TWA employees, including Cullen. The TWA Plan is self-insured. TWA is the TWA Plan's sponsor and administrator, and Metropolitan Life Insurance Company ("MetLife") is the claims administrator. The Plan defines "Totally Disabled" as follows:

> An Employee will be considered Totally Disabled during any period when, as a result of Injury, Sickness or pregnancy, the Employee is completely unable to perform the duties of his occupation and is not performing any other work or engaging in any other occupation or employment for wage or profit.

Plan Document at 01481. The Plan provides for a first level appeal of a decision denying benefit claims to the claims administrator (MetLife), and then a second level appeal to the Pension and Benefits Administrative Committee ("PBAC").

On December 17, 2004, MetLife sent Cullen a letter stating that it needed to review his claim for continuous total disability from ANY occupation. The letter explained:

> During the first twenty-four (24) months for which Long Term Disability benefits are payable, you are considered totally disabled if you are not gainfully employed in any type of job for wage or profit and are unable to perform major and substantial duties of your **OWN** occupation because of sickness or accidental bodily injury.
>
> After twenty-four (24) months for which benefits are payable, you are considered totally disabled if you are not gainfully employed in any type of job for any employer or are unable to engage in major and substantial duties of **ANY** occupation or employment for wage or profit for which you have become reasonably qualified by training, education, or experience.

Exh. H. In response to MetLife's letter, Cullen submitted an "Activities of Daily Living Questionnaire," in which he stated that he helped his wife with laundry, vacuuming, household repairs, and lawn care, and that he drove without assistance. He also stated that his back pain was getting worse, and that after any activity he needed to rest.

Dr. Thomas Chapman submitted an "Attending Physician Statement" to MetLife on January

15, 2005. Dr. Chapman noted Cullen's limitations in sitting, standing, walking, climbing, bending and lifting, and said that Cullen could not return to his previous job. In response to the questions "Is patient able to return to modified work?" Dr. Chapman wrote "I do not believe so."

Dr. Valerie Ito reviewed Cullen's benefits claim, and submitted a "Physician Consultant Review" memo to MetLife on April 19, 2005. Dr. Ito opined that in light of Cullen's "documented level of activity," there was no "reason to restrict him from sedentary activity and up to occasional light activity." Exh. L.

On May 6, 2005, Joan Dahlquist, a Vocational Rehabilitation Consultant, completed an "Employability Assessment" of Mr. Cullen. Based on Dr. Ito's description of Mr. Cullen's abilities, Dahlquist determined that Cullen was "capable of work at up to Sedentary exertion level activity defined by the U.S. Department of Labor." Exh. M. Dahlquist found that alternative occupations were available to Cullen, including Maintenance Dispatcher, Jacket Preparer, Accounting Clerk, and Customer Complaint Clerk.

MetLife informed Cullen that his benefits were being terminated on May 11, 2005 because he no longer met the definition of disability under the TWA Plan. Cullen appealed this determination on November 16, 2005. In connection with his appeal, Cullen submitted a Functional Capacity Evaluation from North Kansas City Hospital, which determined that Cullen could perform a "[p]hysical demand level of sedentary," but also noted that he could only sit for fifteen minutes at a time. Cullen also submitted a Vocational Evaluation Report prepared by Lesa A. Keen, a Rehabilitation Consultant. Ms. Keen reviewed the Functional Capacity Evaluation, interviewed Cullen, and concluded that the evidence "suggest[s] this individual's pain is such that he could not sustain or maintain any competitive employment." App. C at p. 9. Cullen also submitted a letter from Dr. Ann M. Romaker, a sleep specialist, who stated that Cullen reported that he was "doing

well" and had no significant changes in his health since his last visit in September 2003. Exh. Q. Dr. Romaker also stated that Cullen reported he "falls asleep in minutes," at night, that he "has occasional drowsiness just after breakfast in the morning," that "he denies drowsiness any other time of the day or while driving," and that he "denies napping during the day." *Id.*

On December 23, 2005, Met Life denied Cullen's appeal of the denial of benefits, taking the position that "the medical information supports that Mr. Cullen has the ability to perform sedentary level physical demands with regards to any occupation as well as activities of daily living." Exh. R. Cullen appealed this denial to the PBAC on June 16, 2006. The PBAC referred Cullen's case to an independent medical consulting firm, Network Medical Review ("NMR") for further review by five physicians: Dr. Howard Rosen (anesthesiology and pain management specialist), Dr. Jose Perez, Jr. (internal medicine), Dr. Richard Silver (orthopedic surgery), Dr. Vernon Mark (neurosurgery), and Dr. James Amontree (gastroenterology and internal medicine).

Dr. Rosen concluded that Cullen could "work in sedentary position" and that there was "simply no objective evidence to justify [Cullen] not working at a minimum of a sedentary level." Exh. T. Dr. Perez opined that Cullen's records "did not indicate or provide substantive support that [he] was totally disabled from any occupation." Exh. U. Dr. Silver answered the question of whether Cullen's medical records supported the conclusion that he was totally disabled from any occupation "[u]nequivocally no," and stated that Cullen "was capable of working full duty in a sedentary occupation 5/12/05 to the present time." Exh. V. Dr. Mark stated that "[f]rom an objective neurosurgical point of view [Cullen] could perform sedentary work, with an ergonomic chair that allowed him to slide from sitting to standing on a frequent basis." Exh. W. Finally, Dr. Amontree stated that "[f]rom a gastroenterologic perspective, there is no substantiation that [Cullen] was disabled from any occupation as of 5/12/05." The PBAC denied Cullen's appeal on October 17,

2007.

## Summary Judgment Standard of Review

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248.

## ERISA Standard of Review

The parties agree that the Court's review of MetLife's decision denying Cullen's request for benefits is *de novo*. *Hamilton v. Standard Ins. Co.*, 516 F.3d 1069, 1073 (8th Cir. 2008) (holding that the court reviews a benefits determination under an ERISA plan de novo when the plan does not grant the plan administrator discretion). "The question for the Court to answer is 'not whether some evidence or substantial evidence supported the administrator's decision; it is whether the plaintiff's claim for benefits is supported by a preponderance of the evidence based on the district court's

independent review.'" *Michael v. Am. Int'l Group, Inc.*, No. 4:05CV02400 ERW, 2008 WL 4279582, at *17 (E.D. Mo. 2008) (quoting *Niles v. Am. Airlines, Inc.*, 269 Fed. Appx. 827, 833-34 (10th Cir. 2008)).

When construing the language of an ERISA plan, the Court begins by examining the plain language of the plan documents. *Bond v. Cerner Corp.*, 309 F.3d 1064, 1067 (8th Cir. 2002) (citing *DeGeare v. Alpha Portland Indus.*, 837 F.2d 812, 816 (8th Cir. 1988)). Each provision of the plan "'should be read consistently with the others and as part of an ***integrated whole***.'" *Bond*, 309 F.3d at 1067-68 (quoting *DeGeare*, 837 F.2d at 816). If the Court finds that the plan is ambiguous, it may consider extrinsic evidence, but ambiguities should be construed against the drafter only as a last step. *Bond*, 309 F.3d at 1068 (quoting *DeGeare*, 837 F.2d at 816).

## Analysis

The parties initially dispute whether Cullen is covered by the section of the TWA Plan governing long term disability ("LTD") benefits for management. The TWA Plan provides LTD benefits only for three groups of employees: Pilots, Management, and Flight Dispatch Operators. All other employees, identified as Mechanics and Related Employees, Passenger Service Employees, Flight Attendants, and Non-Contract, Non-Management Employees, are entitled to short term disability benefits only. Whether Cullen was properly classified as a management employee was not addressed by TWA or Metlife in making its determinations. However, in a *de novo* review of a decision to deny benefits, "'a trial court must consider all of the provisions of a policy in question if those provisions are proffered to the trial court as a reason for the denial of coverage,' even where 'not relied upon by the plan administrator at the time the denial was made.'" *Hillstrom v. Kenefick*, 484 F.3d 519, 528 (8th Cir. 2007) (quoting *Weber v. St. Louis Univ.*, 6 F.3d 558, 560 (8th Cir. 1993)).

Unfortunately, the TWA Plan does not define "management" and the parties have not submitted any evidence regarding Cullen's status as management or non-management. Defendants point out that to the extent Cullen is not characterized as management, he has no entitlement to long term benefits. Defendants do not assert that Cullen was a Non-Contract Non-Management employee, and do not assert that he was entitled only to short term disability benefits.[1] Cullen asserts that he is not Management, but does not explain how, if he is not Management, he is entitled to LTD benefits at all. Because Defendants are not asserting that Cullen was never entitled to LTD benefits, and because his only source of entitlement to LTD benefits is as a Management employee, the Court finds that Cullen fits the undefined category of Management.[2]

The TWA Plan for Management provides in pertinent part as follows:

Monthly Disability income will be paid to you if you become Totally Disabled from any occupation while covered because of an accident, Sickness or pregnancy.

* * *

If you were hired before January 1, 1985, you will receive 65% of you Basic Earnings for 24 months, then 55% of your Basic Earnings up to age 65, if Totally Disabled from any occupation.

Exh. E at 52. The TWA Plan defines "Totally Disabled" as follows:

An Employee will be considered Totally Disabled during any period when, as a result of Injury, Sickness or pregnancy, the Employee is completely unable to perform the duties of his occupation and is not performing any other work or engaging in any other occupation or employment for wage or profit.

Exh. E at 12. Defendants assert that, read together, these provisions mean that Cullen can receive

---

[1] Defendants correctly point out that if Cullen were entitled to short term disability benefits only, he would have been eligible to receive a maximum of $36,351.00, and that he has received $41,991.65 in LTD benefits as a Management employee.

[2] The Court requested supplemental briefing from the parties on this issue. Unfortunately, neither party was able to shed additional light on Cullen's status. Because Cullen can only be entitled to LTD benefits if he is classified as management, the Court so finds him.

LTD benefits for 24 months if he is unable to perform *his* occupation, but after 24 months may only continue receiving benefits if he cannot perform *any* occupation. The Court agrees with Defendants; this interpretation is the only one that reconciles both provisions. *See Bond*, 309 F.3d at 1067-68.

Defendants contend that their termination of benefits is therefore reasonable because the definition of totally disabled changed. By the terms of the TWA Plan, however, the definition changed 24 months after Cullen began receiving benefit, or on October 1, 2003. Metlife apparently did not undertake to reevaluate Cullen's claim until more than a year later, in December 2004. Exh. H. Defendants offer no explanation for this delay, other than to complain that they are now entitled to repayment of benefits overpaid.

Plaintiff's first contention in his Motion is that the record reflects that Cullen is so impaired as to not be able to perform his own occupation of systems analyst. There is really no dispute about this point. Defendants focus on the any occupation standard, and for the reasons explained above, so will the Court.

Cullen also points out both in his Motion and his Response to Defendants' Motion that there was no showing of medical improvement by Cullen. This argument, however, misses the point. Defendants do not need to demonstrate medical improvement – rather the definition of disability changed after 24 months. Thus, at that time, Cullen bore the burden of demonstrating that he was disabled not only from his own occupation, but that he was disabled from any occupation.

Cullen cites *McOsker v. Paul Revere Life Ins. Co.*, 279 F.3d 586, 590 (8th Cir. 2002), for the proposition that "in determining whether an insurer has properly terminated benefits that it initially undertook to pay out, it is important to focus on the events that occurred between the conclusion that benefits were owing and the decision to terminate them." (citing *Walke v. Group Long Term Disability Ins.*, 256 F.3d 835, 840 (8th Cir. 2001)). The *McOsker* court also noted that it was "not

suggesting that paying benefits operates forever as an estoppel so that an insurer can never change its mind; but unless information available to an insurer alters in some significant way, the previous payment of benefits is a circumstance that must weigh against the propriety of an insurer's decision to discontinue those payments." Here, the event that occurred "between the conclusion that benefits were owing and the decision to terminate them" was the change in the definition of totally disabled, from "your occupation" to "any occupation." Moreover, Defendants received and reviewed significant additional medical evidence as part of its review under the "any occupation" standard, including Plaintiff's submissions and numerous independent medical reviews. *Kecso v. Meredith Corp.*, 480 F.3d 849, 854 (8th Cir. 2007) (finding that defendant's decision to terminate benefits was supported by its receipt of significant additional medical information regarding claimant's condition). The fact that Defendants apparently delayed in reviewing Cullen's claim for LTD benefits for the change in definition does not create an entitlement to them on Cullen's part.

Having determined that Cullen is entitled to LTD benefits only if he can establish that he is disabled from any occupation, the Court finds that Cullen has not met his burden. Cullen's own treating physician did not state unequivocally that Cullen could not work in any occupation. The only evidence that supports Cullen's claim that he is disabled from any occupation is the Functional Capacity Equivalent evaluation prepared by Leesa Keen. As the Eastern District recently observed, "the usefulness of the results of a FCE are extremely limited. . . . 'tests of strength such as a[FCE] can neither prove nor disprove claims of disabling pain.'" *Michael v. Am. Int'l Group, Inc.*, No. 4:05CV02400 ERW, 2008 WL 4279582, at *19 (E.D. Mo. Sept. 15, 2008) (quoting *Lamanna v. Special Agents Mut. Benefits Ass'n*, 546 F. Supp. 2d 261, 296 (W.D. Pa. 2008)). Here, there is simply not evidence sufficient to meet Plaintiff's burden of showing that he is disabled from any occupation. Thus, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion

for Summary Judgment is GRANTED.

## Defendant's Counterclaim

Defendant brought a counterclaim seeking reimbursement of benefits that it allegedly overpaid. Defendant cites caselaw in which courts awarded reimbursement where the insurer overpaid because the claimant's social security payments were not offset. That is not the case here. Defendant seeks reimbursement based on their own failure to reevaluate Cullen's claim at the time allowed for by the Plan. The Court finds that there is no authority supporting such an award. Thus, Defendant's Motion for Summary Judgment on its Counterclaim is DENIED.

     /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT

Dated:  July 30, 2009